# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| v. | Mag. No. 15-4003 (MAH) |
| GUILLERMO JIMENEZ, CARLOS LOPEZ, and TOMAS HERNANDEZ | **Filed Under Seal** |

I, Special Agent Adriana DiMiceli, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. From at least as early as October, 2013 through the present, in Union County, in the District of New Jersey, and elsewhere, the defendants,

GUILLERMO JIMENEZ,
CARLOS LOPEZ, and
TOMAS HERNANDEZ

did knowingly and intentionally conspire with each other and others to distribute and possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A), in violation of Title 21, United States Code, Section 846.

I further state that I am a Special Agent with the United States Drug Enforcement Administration, and that this complaint is based on the following facts:

SEE ATTACHMENT A

_____
Special Agent Adriana DiMiceli
U.S. Drug Enforcement Administration

Sworn to before me and subscribed in my presence,
February 9 2015 in Newark, New Jersey

HONORABLE MICHAEL A. HAMMER            _____
UNITED STATES MAGISTRATE JUDGE         Signature of Judicial Officer

## **ATTACHMENT A**

I, Adriana DiMiceli, am a Special Agent with the Drug Enforcement Administration ("DEA"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, statements from co-conspirators, and my review of reports, documents, and items of evidence. Where statements of others are related herein, they are related in substance and part. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. The DEA is investigating a drug trafficking organization involved in a conspiracy (the "Conspiracy") to transport and distribute large quantities of cocaine and U.S. currency within the United States. The Conspiracy involves, *inter alia*, transporting cocaine across the country secreted in hidden compartments of cars shipped via auto transport truck from California to New Jersey, New York, and Connecticut, and elsewhere, and transporting large sums of U.S. currency across the country from the New York/New Jersey/Connecticut area, and elsewhere, to California.

2. As part of its investigation, and as described in further detail herein, the DEA has identified GUILLERMO JIMENEZ ("JIMENEZ"), CARLOS LOPEZ ("LOPEZ"), and TOMAS HERNANDEZ ("HERNANDEZ"), and other co-conspirators as members of the Conspiracy. The above-named co-conspirators have engaged in the following overt acts described below.

**The October 2013 Seizure**

3. On or about October 17, 2013, law enforcement officers in Arizona conducted a traffic stop of a car transport truck, and obtained consent from the truck driver to search the vehicles contained on the truck. During the search of a Toyota Sienna (the "Sienna"), the officers recovered and seized approximately 33 kilograms of cocaine concealed in a hidden compartment in the Sienna's roof.

4. The bill of lading for the Sienna showed the delivery address as Manville, New Jersey, and the delivery contact as "Carlos" (no last name). Law enforcement subsequently arranged for a ruse delivery of the Sienna in order to identify "Carlos." On or about October 22, 2013, DEA agents set up surveillance at the appointed delivery location of the Sienna in Manville, New Jersey, and there observed LOPEZ and another individual subsequently identified as a

member of the Conspiracy ("Co-Conspirator 1") waiting together in the area of the appointed delivery location. Local law enforcement officers then conducted a vehicle stop of the car transport truck in front of LOPEZ and Co-Conspirator 1. Shortly thereafter LOPEZ and Co-Conspirator 1 left the area.

**The March 2014 Seizure**

5. On or about March 5, 2014, LOPEZ arrived at Newark Liberty International Airport ("Newark Liberty Airport") in New Jersey on a flight from San Diego, California.

6. Law enforcement officers began conducting surveillance of LOPEZ upon his arrival in New Jersey.

7. Shortly after arriving at Newark Liberty Airport, LOPEZ entered a gold Nissan Maxima (the "Maxima") driven by another individual identified as a member of the Conspiracy ("Co-Conspirator 2").

8. Law enforcement officers followed the Maxima from Newark Liberty Airport to the Bronx, New York, where Co-Conspirator 2 dropped off LOPEZ at a hotel. Later that day, Co-Conspirator 2 returned to the hotel in the Maxima and picked up LOPEZ. Law enforcement officers followed the two men to the NADE Auto Auction ("NADE") in Bordentown, New Jersey. After waiting at NADE for a period of time, LOPEZ and Co-Conspirator 2 drove up and down the same road for approximately twenty-five minutes before stopping at a nearby truck stop where numerous vehicle transport trucks were parked.

9. After waiting nearly three hours at the truck stop, LOPEZ and Co-Conspirator 2 drove back to NADE, and law enforcement officers eventually observed Co-Conspirator 2 driving the Maxima, and LOPEZ driving a black Mercedes Benz ML 350 (the "Mercedes"). Both cars then pulled out of NADE in tandem, whereupon law enforcement officers continued to follow both vehicles as they drove throughout New Jersey.

10. Later that same evening, law enforcement officers observed both the Mercedes and the Maxima pull into the driveway of a house in Plainfield, New Jersey (the "Plainfield Residence"). LOPEZ then parked the Mercedes inside a detached one-car garage adjacent to the Plainfield Residence (the "Garage"). Shortly thereafter, LOPEZ and Co-Conspirator 2 drove away from the Plainfield Residence in the Maxima.

11. Approximately twenty-five minutes after driving away from the Plainfield Residence, LOPEZ booked a flight from La Guardia Airport to San Diego, California, scheduled to depart at approximately 6:00 a.m. the following morning.

12. Law enforcement officers continued to surveil the Plainfield Residence and at approximately 10:00 p.m., a silver Jeep Commander (the "Jeep") driven by Co-Conspirator 2 with JIMENEZ in the passenger seat arrived at the Plainfield Residence, and pulled into the driveway.

13. Law enforcement officers observed JIMENEZ get out of the Jeep carrying what appeared to be a small tool bag. JIMENEZ, Co-Conspirator 2, and another individual identified as a member of the Conspiracy ("Co-Conspirator 3"), then entered the Garage. Law enforcement officers continued surveillance of the Garage and observed movement inside the Garage, as indicated by the movement of shadows visible from outside the Garage.

14. Shortly thereafter, law enforcement officers observed Co-Conspirator 3 exit the Garage carrying what appeared to be a heavy duffle bag and enter the Plainfield Residence with the bag. Shortly thereafter, Co-Conspirator 3 walked out of the Plainfield Residence without the bag and re-entered the Garage.

15. A few minutes later, the door of the Garage opened and officers observed the Mercedes, with its front driver's side door open. Officers then observed the Jeep, driven by Co-Conspirator 2, and the Mercedes, driven by JIMENEZ, drive away together. Law enforcement officers pursued both cars until they split off from each other, at which point the officers pursued the Mercedes.

16. Later that night, the Mercedes pulled into a driveway of a residence in the Bronx, New York (the "Bronx Residence"). Law enforcement officers surveilled the Bronx Residence and observed the Jeep arrive shortly after midnight. Thereafter, officers observed Co-Conspirator 2 and JIMENEZ drive away from the Bronx Residence in the Jeep.

17. Law enforcement officers then followed the Jeep as Co-Conspirator 2 and JIMENEZ drove to two different banks in the Bronx, and then to La Guardia Airport in New York. There, JIMENEZ exited the Jeep and entered a departures terminal. Officers then followed Co-Conspirator 2 as he drove the Jeep back to the Bronx Residence.

18. On or about March 6, 2014, law enforcement officers conducted a search of the Plainfield Residence and recovered approximately 17 kilograms of cocaine inside a duffle bag.

19. On the same date, law enforcement officers conducted searches of the Bronx Residence and the Mercedes, which was parked in the garage there. Officers recovered approximately $700,000 in cash from a concealed compartment inside the Mercedes.

**The April 2014 Seizure**

20. On or about April 4, 2014, LOPEZ arranged for the shipment of a 2012 Toyota Sienna to Connecticut (the "2012 Sienna"). The 2012 Sienna arrived in New Jersey on or about April 18, 2014.

21. On or about April 23, 2014, the 2012 Sienna was delivered to Monroe, Connecticut, where it was picked up by HERNANDEZ. HERNANDEZ drove the 2012 Sienna to a residence on Main Street in Monroe, Connecticut, where the car remained until on or about May 1, 2014. On that date, law enforcement officers responded to a location in Stamford, Connecticut, where officers observed the 2012 Sienna parked in a row with two other vehicles. It appeared as though the cars were ready to be picked up for transportation on a car carrier.

22. Also on May 1, 2014, the 2012 Sienna arrived at a location on Valley Road in Little Ferry, New Jersey. Law enforcement officers responded to the location and there observed the 2012 Sienna on a TransAuto Logistics car hauler bearing a California license plate.

23. On or about May 3, 2014, law enforcement officers in Pennsylvania conducted a traffic stop of the car hauler carrying the 2012 Sienna. Pursuant to a search of the 2012 Sienna, law enforcement recovered twelve heat-sealed and shrink-wrapped packages containing over $500,000 in cash secreted inside concealed compartment.

**The October 14, 2014 Search of The Bridgeport, Connecticut Apartment**

24. On or about October 13, 2014, LOPEZ flew from California to the John F. Kennedy Airport in New York. He was surveilled arriving with two other known members of the conspiracy. LOPEZ and the other individuals met with HERNANDEZ, and together all four individuals traveled to an apartment in Bridgeport, Connecticut (the "Bridgeport Apartment"). Later that morning, another

suspected member of the Conspiracy, driving a gray Audi A6 station wagon (the "Audi A6"), arrived at the Bridgeport Apartment, and was seen conferring with HERNANDEZ and other co-conspirators.

25. Later that same day, HERNANDEZ left the Bridgeport Apartment, and was surveilled going to a nearby UPS store where he picked up a large shipping box. Agents subsequently learned that the account used to receive that shipment was opened with what appeared to be a false identification card. HERNANDEZ was surveilled returning to the Bridgeport Apartment with the box. Shortly thereafter, LOPEZ and another known member of the Conspiracy left the Bridgeport Apartment with roller suitcase bags and took a train to New York City, New York.

26. Also on or about October 13, 2014, law enforcement agents executed a court-authorized search warrant of the Bridgeport Apartment while it was unoccupied. Inside, they found objects associated with narcotics trafficking, including a money counter, five heat/vacuum sealers and plastic bags (consistent with those used to package and transport controlled substances and money), bank deposit slips, and documents with handwritten notations consistent with counting money. It did not appear that anyone was living at the Bridgeport Apartment at that time.